Ernesto CHACON, individually and as Project Director and Field Coordinator for the Latin American Union for Civil Rights, the Latin American Union for Civil Rights, Alonzo Watkins, individually and as Chairman of the Resident Board of Directors for the Concentrated Employment Program, Inc., Hollis Stewart, James Brewer III, by his parent and next friend, Pilet Smith and Sammie Kerns, individually and on behalf of all others similarly situated, Plaintiffs,

v.

George P. SCHULTZ, individually and in his capacity as Secretary of the United States Department of Labor, the United States Department of Labor, Lewis F. Nicolini, individually and in his capacity as Contracting Officer and Regional Manpower Administrator for Region Five of the Manpower Administration of the United States Department of Labor, the Office of Economic Opportunity, Donald Rumsfeld, individually and in his capacity as Director of the Office of Economic Opportunity, the United States Department of Health, Education and Welfare, Robert Finch, individually and in his capacity as Secretary of the United States Department of Health, Education and Welfare, Defendants.

No. 70–C–287.

United States District Court,
E. D. Wisconsin.

Dec. 30, 1970.

Robert Sugerman (Freedom Through Equality), Milwaukee, Wis., for plaintiffs.

Joseph P. Stadtmueller, Asst. Dist. Atty., Milwaukee, Wis., for defendants.

## OPINION AND ORDER

TEHAN, Chief Judge.

Put as succinctly as possible, the plaintiffs in this action challenge the legality under the EOA[1] of the transfer of control of the MSP[2] and MDTA[3] training program of the Milwaukee CEP[4], part of the CWTP[5] established under Title I–B of the EOA, from the Resident Board of Directors of the CEP to the WSES[6] and VED[7] under a proposed contract between the DOL[8] and CR–SDC[9], Milwaukee CAA[10], which proposed contract is to conform with MAO[11] 14–69 and Region Five CEP Memorandum No. 10. The RMA[12] for Region Five of the Manpower Administration of the DOL, contracting officer, and the OEO[13] and its Director and HEW[14] and its Secretary, which departments have certain responsibilities under the EOA, are named as defendants as are the DOL and its Secretary. Neither the WSES and CR–SDC, the roles of which under or in executing the proposed contract are challenged, are joined as defendants. The complaint charges that an alleged lack of resident participation under the proposed contract or any possible contract executed to conform to MAO 14–69 or Region Five CEP Memorandum No. 10 renders such contract and the order and memorandum illegal under the EOA and regulations thereunder and/or CAM[15] No. 84, and asks this court to so declare and to declare the duties of the department head defendants to assure resident participation to order said defendants to submit a policy providing that participation and to enjoin execution of any contract pursuant to MAO 14–69 or Region Five CEP Memorandum No. 10.

When the complaint was filed, the plaintiffs sought a temporary restraining order and preliminary injunction but, on agreement of defendants that no contract of the type challenged herein would be executed without due notice pending the court's decision, the parties proceeded to prepare the case for a ruling on jurisdictional questions raised or on the merits.

The defendants have now moved to dismiss the action for lack of jurisdiction and for failure to state a claim on which relief can be granted and have moved in the alternative for summary judgment. The plaintiffs have filed a cross-motion for summary judgment. Briefs and affidavits with respect to the motions have been submitted, argument has been heard and the court is prepared to render its decision. Although jurisdictional questions have been raised by the defendants, we deem it appropriate to consider the merits of the controversy, placed before us by the parties' cross-motions for summary judgment, due to pressures of time attendant upon the execution of any new contract.

Since its inception, the Milwaukee CEP has had as its prime sponsor the CR–SDC and that role will remain with it under the proposed contract involved herein and is not challenged by the plaintiffs.

1. Economic Opportunity Act of 1964, as amended.

2. Manpower Services Package.

3. Manpower Development and Training Act of 1962, as amended.

4. Concentrated Employment Program.

5. Comprehensive Work and Training Program.

6. Wisconsin State Employment Service.

7. Vocational Education Department.

8. Department of Labor.

9. Community Relations—Social Development Commission.

10. Community Action Agency.

11. Manpower Administration Order.

12. Regional Manpower Administrator.

13. Office of Economic Opportunity.

14. Department of Health, Education and Welfare.

15. Community Action Memorandum.

With respect to the role of the prime sponsor, the EOA provides:

"SEC. 122. (a) For each community program area, the Director shall recognize a public or private nonprofit agency which shall serve as the prime sponsor to receive funds under section 2740 of this title (except as otherwise provided in section 2740(c) of this title). This agency must be capable of planning, administering, coordinating, and evaluating a comprehensive work and training program.

(b) The prime sponsor shall provide for participation of employers and labor organizations in the planning and conduct of the comprehensive work and training programs.

(c) The prime sponsor shall be encouraged to make use of public and private organizations as delegate agencies to carry out components of the comprehensive work and training program, including without limitation agencies governed with the participation of the poor and other residents of the neighborhoods or rural areas served, educational institutions, the public employment service, the public welfare agency, other health and welfare agencies, private training institutions, and other capable public and private organizations.

(d) The prime sponsor and delegate agencies shall provide for participation of residents of the area and members of the groups served in the planning, conduct, and evaluation of the comprehensive work and training program and its components. Such persons shall be provided maximum employment opportunity in the conduct of component programs, including opportunity for further occupational training and career advancement.

(e) The Director shall prescribe regulations to assure that programs under this part have adequate internal administrative controls, accounting requirements, personnel standards, evaluation procedures, and other policies as may be necessary to promote the effective use of funds."

Under the CEP as presently constituted under extensions of the original contract, conduct of the program components is subcontracted to various local public and private agencies and organizations, the principal subcontractor being the CEP Resident Board which has in fact operated the program.[16] As we read the EOA and agency memoranda and orders referred to by the parties, this procedure, i. e., substantial control by a resident board, is permitted, but not mandated under the law, and indeed was not contemplated as necessary.[17]

16. The Resident Board is composed of 21 members elected at a public meeting of residents of the target areas community as a policy-making board. It considers and determines policy matters relating to operation of the CEP Centers, including the MSP and training program.

17. In the April 1968 delegation agreement between the OEO and DOL, the following clauses appear:

"II. *Basic Policies*

2. The State Employment Services (SES), through the local employment offices are the presumptive supplier of all manpower services of the Title I–B programs if they meet the requirements for delegate agencies under Section 122."

"IV. *The Role of the State Employment Service Local Office*

In those cases where the local ES is the supplier of manpower services it shall be by contractual arrangement with the project sponsor (when Title I–B funds are utilized) or by memorandum of agreement (when other funds are used). These manpower services will include outreach, intake, assessment and diagnosis, referral to supportive services or appropriate training, advocacy including coaching, job development and placement as needed. In conducting these manpower services, the Employment Service shall employ subprofessionals including the poor in the planning, conducting and evaluation phases."

and MAO No. 12–68, dated October 9, 1968, provides:

"E. *Provision of Manpower Services*
The State Employment Service (SES) is the supplier of all manpower services

As alleged by the plaintiffs, the proposed contract and the guidelines pursuant to which it was drafted, diminish the role of the Resident Board substantially in operating the MSP of the CEP and the training program by transferring operation, direction and control of all but the supportive services component of the MSP to the WSES and by threatening preponderant administrative control of the training program, direction and operation of which has been participated in by the Resident Board, by the VED under a funding arrangement with the WSES. The plaintiffs contend that this diminution violates the resident participation and employment opportunity requirements of the EOA and administrative guidelines promulgated thereunder.

The relevant portions of the EOA cited by the plaintiffs in support of their contention are § 122, quoted previously, and § 120, setting forth the purpose of Title I–B, which contemplates the affording of "maximum opportunities for local initiative in developing programs which respond to local needs and problems.[18] § 122(c) lists as potential delegate agencies those governed with the participation of the poor and other residents of the neighborhoods served and § 122(d) commands both the prime sponsor and delegate agencies to "provide for participation of residents of the area and members of the groups served in the planning, conduct, and evaluation" of the CEP and to provide "maximum employment opportunity * * * including opportunity for further occupational training and career advancement" in the conduct of component programs. Administrative guidelines cited by the plaintiffs amplify the statutory provisions concerning resident participation.

The plaintiffs have also cited portions of Title II of the Act relating to community action agencies and programs, which sections are not truly relevant to Title I–B, except insofar as a CAA, the

for the CWTP pursuant to Section 637 of the EOA, as amended. Manpower services provided to a CWTP by a SES will be made available to the extent possible from current SES resources. The provision of these services will be defined in a memorandum of agreement (BWTP Form 32 rev.) between the SES and the PS.

It is the responsibility of the PS to insure that these manpower services are provided in accordance with terms of the contractual agreement or the memorandum of agreement referred to above. If in the course of carrying out his monitoring and overseeing responsibilities, the PS determines that the SES is not supplying manpower services in a satisfactory manner, he should attempt to resolve the matter with the appropriate representative of the SES central office. If the problem cannot be resolved at the SES central office level, he should present his findings to the RMA.

When as a result of the above procedure the RMA determines that a SES is not in compliance with the Secretary's Regulations requiring the SES to be responsible for supplying the manpower services specified in the CWTP, the RMA will, in consultation with the PS, arrange for such services to be supplied by another private or public agency. The requirements of Section G of this document are applicable to any agency providing such manpower services.

Whenever manpower services are required for a CWTP which are over and above those normally provided by the ES, the PS through contractual arrangement, shall reimburse the ES State Agency for the provision of these additional services. Guidelines for reimbursement to the SES will be provided in a subsequent document.

Although the SES is responsible for providing the full range of manpower services set forth in the CWTP, it is recognized that it may be necessary or desirable for the SES to make appropriate arrangements with other private or public agencies to provide a particular manpower service."

§ 122(c) of the EOA quoted above refers to a variety of potential delegate agencies including, but not limited to "agencies governed with the participation of the poor and other residents of the neighborhoods * * * served."

18. We do not read this language alone as compelling participation of target area residents although this conclusion is not controlling on our decision.

CR–SDC, has been designated the prime sponsor. It should be here noted that the CR–SDC has not been joined as a defendant in this action and its composition and actions cannot be directly challenged.

■ Whether or not the provisions of Title II and language of § 120 cited by the plaintiffs are considered, it is clear and uncontested that the EOA directs resident participation in the planning, conduct and evaluation of the CEP and its components. It is also clear that that participation must be meaningful and that the law requires that residents be provided maximum employment opportunity in the conduct of component programs. Our examination of the record herein convinces us, however, that the plaintiffs interpret the resident participation and employment opportunity requirements as meaning "resident control" or veto power and we find no warrant for this equation.

We are asked to rule that under the proposed contract meaningful resident participation is foreclosed and maximum employment opportunity for residents is precluded. This request is based primarily on the prior history of WSES [19] and its alleged inability under Wisconsin law to provide employment with opportunity for advancement to residents of the target areas such as could be provided under a contract like that now in effect. Such a ruling would ignore the specific provision of the proposed subcontract between the CR–SDC and WSES and the provisions of the CR–SDC's contract set forth and described in Paragraphs 8, 9 and 10 of the affidavit of Francis J. Walsh, Administrator of the WSES as follows:

"8. Under the proposed subcontract, the Wisconsin State Employment Service is required to: '* * * abide by all applicable terms and conditions imposed and required by any

such contract between the Contractor and the U. S. Department of Labor, to be known as the prime contract, and further will abide by all subsequent revisions and modifications of it, as published, to set forth administrative and statutory changes imposed on or by the U. S. Department of Labor * * *.'

9. Under the new proposal, the CR–SDC as prime sponsor is required to 'operate and perform the project * * * in strict accordance with the Manpower Development and Training Act of 1962 as Amended, and the Economic Opportunity Act of 1964 as Amended, the regulations issued under both Acts, the standards and procedures of the United States Department of Labor, and the general provisions and special provisions * * *'

As part of the new proposal, the prime sponsor's contract contains the following two provisions: (a) 'No less than 50 percent of contractor's staff employed in the performance of this contract, (excluding job coaches) [2] shall be residents of the target area served by the Concentrated Employment Program funds under this contract, and the contractor agrees that any subcontract(s) hereunder shall require the subcontractor to hire no less than 50 percent of its staff, excluding job coaches, for the performance of work under such subcontracts from among residents of the target area served by the Concentrated Employment Program.' (b) 'In conducting the manpower services, the State ES Agency shall employ subprofessionals—including the poor—in the planning, conducting, and evaluation phases.' Both of these provisions are required in CEP contracts by the United States Department of Labor.

10. By virtue of the contract requirements described in paragraphs 8

---

19. The plaintiffs have submitted affidavits demonstrating WSES's failure in the past, using a professional staff, to obtain the confidence and support of the target area residents or to establish rap-

port or an effective relationship with those to be served by its employment efforts, a failure which has not been experienced in the CEP under the Resident Board.

and 9 of this Affidavit, the Wisconsin State Employment Service shall be required, under its proposed subcontract, to (a) hire no less than 50 percent of its staff (excluding job coaches) [2] for the performance of work under its subcontract from among residents of the target area served by the Milwaukee Concentrated Employment Program; (b) employ sub-professionals—including the poor —in the planning, conducting, and evaluation phases of its subcontract under the Milwaukee Employment Concentrated Employment Program. The aforesaid requirements in the proposed subcontract are also part of the requirements of the present Wisconsin State Employment Service subcontract in the Milwaukee CEP program.

The 50 percent requirement became a part of the subcontract on or about July 15, 1968. It was and is intended to support and foster citizen participation at all levels of planning and programming.

The requirement to employ subprofessionals, including the poor, in the planning, conducting, and evaluation phases of the program became a part of the Wisconsin State Employment Service subcontract in July 1969. It also is intended to support and foster citizen participation at all levels of planning and programming." (Footnote 2 not added here)

That affidavit further describes revisions of State Civil Service requirements to permit provision of employment opportunity for residents of target areas and sets forth the intention of WSES to comply with the proposed subcontract.

We cannot assume based on prior activities of the WSES that it will not comply with the obligations to be imposed on it by contract and by law. Affidavits submitted by the plaintiffs do not, in our opinion, establish either inability or lack of intent on the part of WSES to comply in the future. Should non-compliance in practice occur, it should be noted that MAO 14–69 itself provides specifically that the potential for subcontract termination due to the subcontractor's inability or unwillingness to meet negotiated and agreed on goals is present and that such termination is the continuing policy of the DOL.

 The proposed arrangement under MAO 14–69 and Region Five CEP Memorandum No. 10 changes the structure of Milwaukee's CEP by changing control of its components. We find no violation of law in the change itself and are unable to predict a violation in practice should the proposed contract take effect. Neither do we perceive a breach of duty to the plaintiffs on the part of the defendants.

For the above and foregoing reasons,

It is ordered that the defendants' motion for summary judgment is hereby granted and that the above entitled action is hereby dismissed.